The next case for argument is 22-141, DivX, LLC v. Netflix. Did I pronounce your client's name? Oh, you did. I was just giving a chat moment. Whenever you're ready. Yes. Good morning, Your Honors. May it please the Court. My time is very limited here, and we've raised a number of issues on appeal, and so I'd like to focus the Court's attention to the fullest extent possible on the area where I think the Board made the most clear error. And that's with respect to the construction of framed decryption script. So in prosecution, Fetkevich was before the examiner, and Fetkevich is a system where there's a periodic key update. The examiner rejected claims over Fetkevich, including Claim 15, which required synchronized encryption frames with decryption information within an input stream, and that's out of Appendix 287. After that occurred, the applicant sought an amendment where it added more limitations about synchronization of encrypted frames and decryption information, and that, too, wasn't sufficient. There wasn't a formal rejection, but there was another examiner interview, at which point the examiner proposed an amendment to the claims, adding framed decryption stream to each of the claims. Each of the allowed claims requires a framed decryption stream. The Board, however, found framed decryption stream to be met over precisely the same teaching in Fetkevich, a periodic key update put into the stream. That can't be right. A safe harbor here is the exact teaching of Fetkevich that was overcome based upon the examiner's amendment. A framed decryption stream cannot be the basis to find the claim invalid. If I recall correctly, there were other additional limitations added in the examiner's amendment and notice of allowance. Is that right? It is, but can I speak to that? Sure. So if you look at Claim 1, and the only additional limitation that my friends point to is the encryption key pointer. They say that, too, was material. And it was. That's not in Fetkevich. But the encryption key pointer is not in Claim 14. So that could not have been the basis for allowance in Claim 14. And if we go to the examiner's reasons of allowance, she identifies three limitations. She identifies the key pointer. She identifies the assembling limitation, also in Claim 1. And the third limitation that she identifies is framed decryption stream. So if we look at Claim 14, that's the only material limitation that the examiner cited that was the basis for allowance. Now, to make matters worse, the Board did not analyze the prosecution history, and it wasn't because we didn't present it. We did. So we have a situation where the claim is allowed, the claims are allowed over Fetkevich, which is indisputably a periodic key update system where that is added to the stream. And the Board says, we're going to find this claim invalid if there's a periodic key update in the stream, interleaved into the stream, but does not address the prosecution history at all. But it gets worse still. Because the Board also, essentially, wrote the framed decryption stream limitation right out of the claim. If you look at Appendix 21 and 22, the Board says, by virtue of the assembling limitation of Claim 1, we don't even need to look at the framed decryption stream limitation. So we've got a key limitation that is the basis for allowance, at least in the case of Claim 14, which the examiner, that's why the claims were allowed, and the examiner was very familiar with Fetkevich. And yet, yeah, please. Let me see if I understand this. This is the claim limitation about the one-to-one correspondence between decryption information and a given frame? Just to be precise. Every frame gets its own corresponding decryption information? That is the construction we presented. Right. Yes. And so what in the prosecution history tells us that we must be compelled to understand this little bit generic term of synchronized framed decryption stream as perhaps requiring this one-to-one correspondence between decryption information and frame? To be precise, we are not arguing that you have to find that our construction is correct. That is not our position. Our position is you have to find that the board's construction is wrong. And that's because it's allowed over Fetkevich, which is a periodic key update system, and the board doesn't analyze the prosecution history. The board, I'm sorry, the examiner was well aware that Fetkevich is a periodic key update system. The examiner, in rejecting original Claim 14, is at Appendix 283, specifically cited Fetkevich at Column 7, Lines 2 to 21. That references Fetkevich's Figure 2, which makes clear that you have periodic encryption information multiplexed into the stream. And it's undisputed. I guess is there something in the examiner's notice of allowance that explains what his or her thinking was when she or he made this particular amendment to these claims? The only express statements, so we do have to make some inferences, but the only express statements is after an interview, she found based on our agreement to her amendment, she found our arguments persuasive. She identified the three limitations that we talked about previously, only one of which is in Claim 14, and she allowed the claims. But I think there's more of the record that is illuminated. I would like to direct, as I mentioned earlier, we made an interim amendment, which the examiner did not reject formally, but we were asked to make comments in connection with that amendment, which we did. We specifically directed the examiner to our patent's discussion of Figure 6. Our patent's discussion of Figure 6 is the only portion of our patent where the phrase framed encryption stream is found. And if you go through Figure 6, it's an algorithm that says, should we encrypt a frame? If so, let's add encryption information to the framed encryption stream, and then let's go down. Do you want to encrypt another frame? Okay, let's add another framed encryption information into the stream. And so we can infer Appendix 309. It's not the only site. There are other portions where we cited to the examiner the teachings of Figure 6. Again, the only portion of our patent that mentions the frame, the phrase framed encryption stream. And so if you're trying to infer what the examiner thought, it makes sense to me that we pointed to the examiner, the teachings of Figure 6, she latched on to framed encryption stream, and in that context, framed encryption stream, you're adding decryption information on a frame-by-frame basis. And if you proceed on to Column 7, the beginning, it makes clear that you do that even when you're not updating the key. This sounds like a pretty long story the court would have to write in a Federal Circuit opinion to make the case. May I offer a different possibility? Right. I mean, normally there's a sentence, and it's a killer sentence, and we can easily lift it out, paste it into an opinion and say, see, there it is. So this chain of inferences is, pardon the expression, a little spooky. Well, I don't think the court has to go through that exercise. You have options. This is de novo review. I think one of the options that you have is to send it back to the board and just say, look, board, you didn't even talk about the prosecution history. I mean, I don't mean to cast suspicions. You didn't discuss the prosecution history, and yet you're finding the claims invalid over Fekovic and the key teaching of Fekovic. Why did you do that? Can you please explain yourself? You don't have to do that. This is de novo review. You can reach the ultimate question. I also think, and again, I think the clear safe harbor is that a periodic key update as in Fekovic, that can't be a frame-to-curtain stream based upon that prosecution history. But you're offering us the alternatives of, we don't have to say your construction is correct. What is wrong about the board's construction, I guess? Well, I just don't think it can be squared with the prosecution history. The prosecution history, which you think was not adequately discussed. It was not analyzed at all. I mean, we can look at it. And so where would that leave us if we weren't sure that your construction was right, but maybe we didn't think the board's was correct? What do we do at that point? Well, so I think there are decisions, I believe from this court, I can't remember the citation off the top of my head, where the court says, we only have to construe a limitation to the extent necessary to decide the issue. And so if you decide that the board's construction is wrong, you can, and you can do this because they presented two alternative theories below. At least that's what the board, in my view, generously found. Let's assume, for the sake of argument, that's so. We both agree that the first alternative theory would satisfy the claim. The second theory that the board proceeded to find the claims invalid on, that's based upon a periodic key update. So if you find that that is inconsistent with the prosecution history and other claim construction principles, you could reverse that finding, remand it back. Or if you want, as Judge Chen suggested, because the prosecution history is tortured, let's say, you could also ask the board to provide a further analysis of it. It's intrinsic evidence, the prosecution history, right? Yes. So it is de novo. So it's de novo. I mean, it's something that we could do on our own. Of course. Of course. So I would like to preserve my rebuttal time if possible, but I think I have one more minute, so I'll try to address it briefly. And that's going to be the bite-size offset. So claim 10 and 19. Addressed in passing, but I think it's another instance where I think the board just got it wrong. So that claim requires information identifying a bite-size offset. Petitioner of a portion that is encrypted. Petitioner points to a slice. The experts agree. A slice has a varying size. And more specifically, I think I said... I may have misspoken based on the note I just got. So it's data field size. If I said something other than that, I apologize. Okay. Helpful. Thanks. Very good. So something with a varying size, if you just say every fourth slice, which is what Dekovitch says, and each slice is different in size, that's not information identifying a data field size. So unless there are questions on anything I've said, I'd like to reserve the rest of my rebuttal time. Thank you. Good morning, Your Honors. May it please the Court. Harper Batts for Pelley Netflix. I'd like to start off with the synchronized frame decryption stream and make sure we're clear on the term that was construed below. The full term is synchronized frames decryption stream. And to be clear as to Judge Teng's question about what is the issue here, the issue is a one-to-one transmission correspondence. So what Divix is contending that in the transmission with each frame, you have to also send the decryption information with that frame. So with the Institute of Ground and the finding of invalidity, the Board found that you could send, for example, with every two frames, every four frames, every eight frames, this periodic transmission. So the question before the Board was, did the term synchronized frame decryption stream, was it limited to a one-to-one transmission correspondence? And if we look at the final written decision, the Board walked through the claim language as a first instance and said, is there anything in the claim language that supports this narrowing of the claim to a one-to-one transmission correspondence? And there's nothing in the claim language that would be so limiting. And as we see on appeal now, Divix has really seized on this word stream as of the portion of this claim term to argue that stream itself requires this one-to-one transmission correspondence. But that's not supported by the claim language. The Board then went to the specification. Now, what's notable, I think, an oral argument here today is Divix's counsel has run away from Figure 9, which relied upon below in the briefing here before this court for its arguments. Now it's saying, well, let's focus on Figure 6. I'd like to start with Figure 9 and then switch over to Figure 6. So Figure 9 in Appendix 105, there's a description of Figure 9 on Column 9, 27 through 30 of the patent, which is cited by both parties in the briefing. And it says, in the exemplary embodiment, the decryption information 995 may be incorporated within or otherwise transmitted in conjunction with the encrypted video stream. So it's very open-ended language as to what is required in terms of this decryption information and how this decryption information is transmitted. And then if we go to the Figure 6 language, and that's on Appendix 103 and Column 6, Lines 59 to 61, when describing Figure 6, which was cited by my colleague here today, it says, thus, once a frame has been encrypted per Step 610, the information needed to decrypt the encrypted... I assume it says frame... can be added into a synchronized frame decryption stream. Again, there's no reference to any sort of one-to-one transmission correspondence, any reference to how the transmission has to be effectuated. And the board recognizes in its analysis... What about the prosecution history? That seems to be the main event of the morning for Appellant's counsel. Sure. And what happened in the examiner's amendment and Petkovich was right there in front of everybody, and, you know, there's different claims, not just claim one that got amended. And why didn't the board deal with this? So I will start with it, because you asked a number of questions on that in my colleague's time, and I'd like to address those in turn. So first, as he said himself, he kept on inferring what we could speculate as to what the examiner intended. He said, we have to make inferences. He said, it makes sense to me. It's a lot of speculation as to what the examiner meant. What is notable is the prosecution history is silent as to any discussion of a one-to-one transmission correspondence. There's no discussion of it at all. The thing that they're seizing upon still is the term stream, and saying stream has to require this one-to-one correspondence, even though it's not in the claims and it's not in the specification. And what I think is notable is that, in addition to that, both sides' experts testified as to the meaning of stream. So they asked our expert, and we pointed out where they accepted his testimony, but on Appendix 3603, our expert said, well, certainly the instituted combination has a stream because you have encrypted frames that are being interleaved with the decryption information, and that certainly should satisfy it. And then the board also noted that's exactly what Divick's infringement allegations in the district court contended. They contended that synchronized frame decryption stream, and this is Appendix 855, their complaint, they said, synchronized frame decryption stream is satisfied when Netflix synchronizes the frame decryption information by interleaving, so interleaving the information with the frames. So that's consistent. And I do want to go to Divick's expert testimony on this point, because I think it's really a core issue that they've not addressed in their argument about the meaning of stream. So if we turn to Appendix 3075, we repeatedly asked Divick's expert in deposition, what does the term stream mean? So if you look at the top of Appendix 3075, we asked a question, what does the word stream mean in the phrase synchronized frame decryption stream? And the answer was, well, there's many different definitions depending on the context that we're in. So he's saying, well, you don't really know what stream means, it depends on context, and we didn't stop there. We asked then on the next page, Appendix 3076, we asked, well, what is at the bottom of 3075, we asked again, and then he responded, what I'm saying is that stream has a lot of different meanings. And if you go down to the bottom of his answer there, he says, because otherwise stream has so little meaning. You have to analyze the term as a whole. So Divick's doesn't have any support. They didn't submit dictionary definitions or any other support below to argue that stream has this one-to-one correspondence meaning. And their own expert says it can have a lot of different meanings or it has little to no meaning. So in terms of the prosecution history, what we have is the examiner giving multiple reasons and a notice of allowance. To claim one. What about claim 14? The examiner is silent as to claim 14. So what we have is the examiner made multiple amendments as well for claim 14. So there's nothing clear in the file history, let alone, they haven't argued a disavow or disclaimer of claim scope, let alone shown it. They're just saying we should infer that somehow that there should be this one-to-one correspondence. Is it your opinion that Fetkevich anticipates claim 14? I think our position is that does Fetkevich anticipate claim 14? Yeah. I have to think about that one, Your Honor, because we did an obvious combination with three references for a lot of different limitations. It's obvious. Yes, it is. And what we noted, and I want to point out that the board addressed Divick's arguments about the prosecution history and the institution decision. So on appendix 4865 to 4867, they spent three pages addressing, well, you're complaining that Fetkevich was already before the examiner, that examiner considered Fetkevich, whether these teachings are duplicative. And the board concluded in the institution decision that no, we're pointing to different teachings in Fetkevich. And we pointed out that we had teachings for column 5 and column 6, these other teachings that were about the sending of the framed decryption information rather than Fetkevich's teachings about synchronization. So the board had already addressed this issue at the institution stage. So if there's any other further questions. So Fetkevich does disclose the periodic synchronization, correct? Yes. I don't think there's any dispute that I think both Ueno and Fetkevich have explicit description of synchronization and how to deal with synchronization and the loss of sync or loss of synchronization. So you want to ensure, how do you know that the decryption information that you're receiving is the right decryption information for a particular frame, like if there's a loss in the transmission. So I think that's been clear, was clear below. Do you have any response to the suggestion that we don't need to decide whether DIVX's construction is correct, just whether the board's is incorrect? I think that's a strange position to take, I guess. But I guess the issue that I would have is it's clear that DIVX is contending and asking for a much narrower construction. So is there any basis for narrowing the claim to a much more limited one-to-one transmission correspondence when there's no evidence in the record that would warrant a one-to-one transmission correspondence and there's been no argument for disavowal or disclaimer of claims scope. If there's no further questions on that, I'd like to turn to the claim 10 and 19 argument that they made. So on claims 10 and 19, and I want to get the claim number directly, I have a disagreement here. So on claim 10, the term that I believe my colleague wanted to recite was, the decryption stream includes information identifying a data field size. And they say, well, you don't know the size of the substructures, the slices, so that the board was incorrect in its finding. So I think first off, I think that is a substantial evidence question and not a de novo question here. And I want to point out that... Do slices have a fixed size? Yes. Slices do have a fixed size. So you have a sliced size pre-compression and then when you compress it, it changes into a different size. So I have a couple points of evidence I'd like to direct you to on this issue. The first is, both the Fekovic and Demos references that we relied upon were references that used slices that the unit of data that they use is a slice to decide on what to encrypt. What portion of the frame where they encrypt and then decrypt, it's a slice. And so there's a certain number of slices that make up an individual frame? Correct. There's a certain number of macro blocks that make up a slice? Correct. Okay, keep going. So, as an initial matter, both, we have two different prior art references that show that people were actually doing encryption and using slices. They knew how to identify the slice pre-compression and then in compression, they were able to identify slices for encrypting and decrypting. And I think I'd like to turn briefly to appendix page 3465, which is DIVX's experts declaration. And if you see on that page, paragraph 78, he concedes this point that Fekovic is teaching a partial encryption, partial frame encryption, which would then proceed to encrypt portions of the frame as defined by frame substructures, such as every fourth slice of the frame. So he's conceding that the prior art is teaching a way of identifying the fourth in slice that you want to encrypt and then encrypting that fourth in slice. I think this is also notable for the board also cited the infringement contentions by DIVX on this issue and I think it's telling because if we turn to appendix 1408, the infringement contentions from the district court, what's shown there is that DIVX was identifying slices as being the infringing data unit. So if you look at the bottom of 1408, which is page 19 of their contentions, they describe the now unit, which is, they say, subsample 8 is an IDR slice as shown below, a now unit containing video information. This subsample contains 80 encrypted bytes and 11 unencrypted bytes. So even the evidence they were pointing to in the district court that the board credited in its analysis is showing that the slice has a defined number of bytes for encryption, decryption, it has a notable location. The argument that DIVX is trying to contend is that, well, these slices can change when they're compressed. Well, yes, data gets compressed, it changes in size. And slices can vary in size. A slice doesn't have to be a certain size. But they're still knowable what the sizes of the slices are. And if you turn to appendix page 1409, what you see there is they have the different slices with the number of unencrypted bytes and encrypted bytes in each slice. Yes, they vary in size, but you know the size of each slice and the number of bytes within each slice. There's no other questions? Thank you. Thank you, Your Honor. So just to make a few points. I didn't hear much disagreement on the reasons of allowance. I walked you through how there were three. I heard no disagreement that the only reason for allowance identified limitation was frame decryption information. I saw a reference to appendix 855, which is our the contentions in the complaint. It's our complaint. If you read the very next sentence, it says the encryption is by frame. So I read that paragraph on 855-276. There's no inconsistency in our position. I want to point out something just so you don't think I got something wrong. If you look at the claim 14 was allowed, there is errant underline. So if you look at it at first glance, it may seem like there's more that was added to the claim than there actually was, but if you do a comparison of the underline to the crossed out, almost all of it is the same. So I just want to flag that should anyone look at it. There was an argument that the board addressed this in the institution decision. That's just wrong. The argument we presented at that time, pre-institution, was that 325D dictated non-institution because Fetkevich was before the board. We believed that they were arguing one to one, just like our view of the claim. The issue of claim construction of frame decryption stream was not before the board. And even putting all that to the side, as this court has said in Intelligent Biosystems, the board still needs to address the question once it's fully joined in the final decision. So that just doesn't have merit. Briefly, I'll address slices. I heard agreement that slices do not have fixed sizes, that this is particularly true when they're compressed. I can explain that if it needs to be explained. And something was read from one of our infringement contentions, but I heard it said 80 encrypted bytes. So there is a slice. So with that, I've got one minute remaining. I would just like to address any questions that Your Honor may have. It's an abuse of discretion to consider to review whether or not the board correctly found an argument preserved in the petition. Correct. Or found that an argument wasn't preserved in the petition. May I leave a parting gift for the court? I don't know. It depends. I would like to withdraw that argument and I would like to withdraw the secondary considerations argument. So no one needs to spend time addressing that in the decision. But you're correct. To answer your question, you're correct. Will we take that gift?  Thank you very much, Your Honor. Thank you.